UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TODDRICK BROCKINGTON,

Petitioner,

-vs-

LUIS MARSHAL,
Superintendent,

Respondent.

**DECISION AND ORDER**
**No. 07-CV-0286T**

## I. Introduction

Pro se Petitioner Toddrick Brockington ("Petitioner" or "Brockington") commenced the instant habeas corpus proceeding, pursuant to 28 U.S.C. § 2254, on April 30, 2007. Dkt. No. 1. Petitioner challenges the constitutionality of his conviction, following a jury trial in Monroe County Court, on charges of Manslaughter in the Second Degree, Murder in the Second Degree, and Robbery in the First Degree. Trial Transcript ("T.T.") at 655-656. The charges arose from a shooting incident that occurred on April 9, 1991, in the City of Rochester in which Petitioner shot and killed Timothy McFarland ("the victim") during a robbery. Petitioner is currently serving an aggregate sentence of twenty-five years to life.

In the habeas petition, Petitioner seeks relief on the following grounds: (1) the conviction was obtained by an unconstitutional failure of the prosecution to disclose evidence

favorable to Petitioner; (2) ineffective assistance of trial counsel based on trial counsel's failure to make a reasonable investigation into property collected from victim as well as any evidence the medical examiner collected from the victim; (3) the prosecution suppressed medical examiner's Case Narrative and allowed false testimony to be presented to jury; and (4) the jury charge on the robbery count was erroneous. See Pet. ¶ 12 A-D (Dkt. No. 1). Respondent argues that all of these grounds for relief are subject to an unexcused procedural default and are, in any event, entirely without merit. Resp't Mem. at 10-11, 13 (Dkt. No. 22-1). Respondent argues that the jury instruction claim is unexhausted but procedurally defaulted and, moreover, without merit. Id. at 15.

On January 22, 2008, the Court (Skretny, D.J.) dismissed the habeas petition on the basis that it was untimely. Dkt. No. 8. Petitioner sought and obtained a certificate of appealability from the Second Circuit Court of Appeals. The Second Circuit held that the district court had correctly concluded that Brockington's 2007 petition was filed more than a decade after the "grace period" of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. Brockington v. Marshal, 275 F.3d. Appx. 157, 158, 2010 WL 1740817, at **1 (2d Cir. May 3, 2010) (citing Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998) (allowing defendants convicted before AEDPA to file habeas petitions by April 24, 1997)). However, the Second Circuit found,

the district court erred in failing to determine whether Brockington was entitled to equitable tolling of the statute on the basis of actual innocence.

In particular, the Second Circuit concluded that Brockington's pro se petition–albeit "barely so"– asserted a claim of actual innocence by attaching copies of "two state court decisions denying post-conviction relief, each noting his claim that the case narrative supported his defense that the robbery never occurred and that he was innocent." Brockington, 2010 WL 1740817, at **1 (citing People v. Brockington, No. 91-0321, slip op. at 3 (N.Y. Sup. Ct. Feb. 27, 2006) ("[D]efendant contends that . . . he is innocent of the crimes of which he stands convicted."); People v. Brockington, No. 91-0321, slip op. at 8 (N.Y.Sup.Ct. Dec. 22, 2003) ("[I]t is defendant's contention that the Case Narrative proves that no robbery occurred. . . .")).

Therefore, the Second Circuit remanded the matter "to permit the district court to conduct the following sequential inquiry," 2010 WL 1740817, at **2:

> (1) Did [Petitioner] pursue his actual innocence claim with reasonable diligence?
>
> (2) If [he] did not pursue the claim with reasonable diligence, must an actual innocence claim be pursued with reasonable diligence in order to raise an issue of whether the United States Constitution requires an 'actual innocence' exception to the AEDPA statute of limitations?

> (3) If [he] did pursue the claim with reasonable diligence or if reasonable diligence is unnecessary, does [he] make a credible claim of actual innocence?
>
> (4) If [he] does make a credible claim of actual innocence, does the United States Constitution require an 'actual innoence' exception to the AEDPA statute of limitations on federal habeas petitions?

Id. (citing Whitley v. Senkowski, 317 F.3d at 225-26).

Courts in this Circuit determining whether a petitioner is entitled to equitable tolling based on a claim of actual innocence have found no need to address the first, second, and fourth factors of the above-described analysis if the petitioner fails to "make a credible claim of actual innocence." E.g., Bower v. Walsh, 703 F. Supp.2d 204 (E.D.N.Y. 2010) ("In light of this determination [that petitioner has not set forth a credible claim of actual innocence], the Court need not address the issue of whether reasonable diligence is required in order to pass through the actual innocence 'gateway.'")(citing Doe, 391 F.3d at 161)("In adherence to our repeated statements that we will decide whether equitable tolling is available on the basis of actual innocence only in a case in which the petitioner has made a credible claim of actual innocence, therefore, we do not reach Doe's arguments that various constitutional provisions require that AEDPA's limitations period be tolled for actual innocence.") (emphasis supplied); id. at 173-74; Whitley v. Senkowski, 317 F.3d at 225-26; Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000)).

Given the Second Circuit's stated preference for refraining from deciding whether the Constitution requires an "actual innocence" exception to the statute of limitations unless a petitioner presents a credible claim of factual innocence, the Court confines its analysis to the third aspect of Whitley–that is, whether Petitioner's claim of actual innocence is credible. As discussed further below, Petitioner has clearly failed to make a "credible claim of actual innocence" under the pertinent standards articulated by the Supreme Court and the Second Circuit. Therefore, equitable tolling is unavailable and the petition must be dismissed as untimely.

**II. Discussion**

The Second Circuit has assumed that if actual innocence does provide a basis for tolling the limitations period, the Supreme Court's "delineation of the evidentiary showing necessary to demonstrate actual innocence [in Schlup v. Delo, 513 U.S. 298, 324 (1995)] would apply in evaluating whether the petitioner had made a credible showing of actual innocence." Doe, 391 F.3d at 161 (citing Lucidore, 209 F.3d at 114 (applying the Schlup standard and holding that petitioner had not demonstrated actual innocence)). The Schlup court "carefully limited the type of evidence on which an actual innocence claim may be based and crafted a demanding standard that petitioners must meet in order to take advantage of the gateway[,]" Doe, 391 F.3d at 161, explaining that the

petitioner must support his claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup, 513 U.S. at 324.

In addition, the petitioner must prove it is "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Whitley, 317 F.3d at 225 (alteration in original) (quoting Lucidore, 209 F.3d at 114). The "new reliable evidence" standard requires the court to evaluate the evidence both "on its own merits" and "in light of the pre-existing evidence in the record," if appropriate. Doe, 391 F.3d at 161 (citing Schlup, 513 U.S. at 327-28). Even if a petitioner can prove his evidence is reliable, the court must then determine whether a reasonable juror would have nonetheless convicted petitioner. The court must "determine whether new evidence truly throws the petitioner's conviction into doubt," or whether such evidence "is insufficient to raise a question as to a petitioner's factual innocence." Doe, 391 F.3d at 162.

In this case, the "new" evidence upon which Petitioner relies is the medical examiner's "case narrative" which he obtained in 1996 as the result of a Freedom of Information Law ("FOIL") request. There is a question as to whether the evidence is actually new, since Respondent "does not concede that the People possessed the 'case narrative' and/or that it was not given to petitioner

during discovery." Respondent's Memorandum of Law at 6 n.1. Indeed, the "case narrative" in question appears to be the type of document that would have been turned over to the defense as a matter of routine prior to trial. Even assuming, arguendo, that the "case narrative" qualifies as "new" evidence, it is not reliable evidence of actual innocence.

Petitioner argues that the "case narrative", which shows that the victim was still in possession of money and drugs at the time he was murdered,[1] proves that no robbery occurred. Therefore, Petitioner reasons, he cannot be criminally liable for felony murder and robbery. See Pet'r Mem. of Law at 8-10, 14.

At most, Petitioner is asserting a claim that the evidence was legally insufficient to prove beyond a reasonable doubt a necessary element of the robbery underlying the felony murder charge.[2]

---

1

Petitioner points to a notation regarding the "Personal Effects" found on the victim's body. In the left front pants' pocket, the coroner found "numerous small blue colored packets . . . [that] appear to contain a white, powdery substance", some of which were labeled "Midnight Run." The coroner observed that these packets possibly contained a controlled substance. Also found in the pocket with the money and blue packets were "$58.00 in bills and $.52 in change." In the rear pockets were "2 gold colored keys" and "$239.00 in bills." See Case Narrative at 2, Exhibit C to Petitioner's Reply Memorandum of Law (Dkt. No. 24-3).

2

See, e.g., People v. Simon, 119 A.D.2d 602, 603-04 (App. Div. 2d Dept. 1986) ("It is beyond dispute that the essential elements of the underlying felony must be proven beyond a reasonable doubt in order for a conviction of felony murder to be justified. We find that the evidence in this case was insufficient to establish the forcible stealing of property, an essential element of the underlying felony of robbery. The People alleged that the defendant or his cohorts stole money and a radio from the victim. However, there was no evidence, either direct or circumstantial, that any money had been taken from Charles Miller. Indeed, the only mention of money within the evidence was that $20 in change was recovered from the victim at the hospital.").

However, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).

To be convicted of felony murder, Petitioner must have killed the victim in the course of committing or attempting to commit, and in furtherance of, a felony–including robbery. N.Y. PENAL LAW § 125.25(3). Under New York law, a "robbery" has been committed when "in the course of committing a larceny [a person] uses or threatens the immediate use of physical force upon another person . . . ." N.Y. PENAL LAW § 160.00; see also id. § 155.05 ("A person steals property and commits a larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.").

The medical examiner's "case narrative" does not undermine the prosecution's proof that the victim was forced by Petitioner, at gunpoint, to hand over money from his (the victim's) sock. The prosecution presented proof that Petitioner demanded, "Give me what you got," and as the victim was in the process of retrieving additional items from his pockets, Petitioner fatally shot him in the head and fled the scene. Resp't Mem. at 12 (citing T.T. at 308, 327, 368, 388, 409, 612). In other words, the "case narrative" does not negate the proof that Petitioner, while threatening the victim with the immediate use of physical force, wrongfully took

money from him and, in fact, used deadly force during the commission of the wrongful taking. See People v. Banks, 55 A.D.2d 795, 795, 389 N.Y.S.2d 664, 665-66 (App. Div. 3d Dept. 1976) ("A robbery is . . . a larceny which has been committed with the use of or the immediate threat of the use of physical force.").

Thus, even assuming that the proffered evidence is new and reliable, the "case narrative" is plainly insufficient to raise a question as to Petitioner's legal innocence, much less his factual innocence. See Doe, 391 F.3d at 162 ("As Schlup makes clear, the issue before such a court is not legal innocence but factual innocence."). Any additional items of value (e.g., the cash and the packets of what presumably was a controlled substance) remaining in the victim's pockets did not foreclose the jury from finding that Petitioner shot and killed the victim during a robbery.

Respondent also has construed Petitioner's allegations as asserting that he is actually innocent because a robbery was never completed. However, as Respondent argues, such a contention is based upon a misapprehension of the statutory language regarding the offense of felony murder. Felony murder may be committed during an attempted robbery. See N.Y. Penal Law § 125.25(3) (stating that a person is guilty of felony murder when, "[a]cting either alone or with one or more other persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant,

if there be any, causes the death of a person other than one of the participants") (McKinney's 2006). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. PENAL LAW § 110.00.

The statutory language is clear that Petitioner could still be guilty of felony murder even if the victim never forfeited any or all items to Petitioner in response to Petitioner's demands issued to him at gunpoint. Cf. People v. Dixon, 221 A.D.2d 952, 952 (App. Div. 4th Dept. 1995) ("Although defendant was acquitted of robbery in the first degree, County Court properly instructed the jury that it could consider attempted robbery as a predicate felony for felony murder. There was a reasonable view of the evidence to support the conclusion that defendant and his accomplice attempted to, but did not, commit robbery, and thus that offense was properly submitted to the jury as a predicate felony even though the indictment did not charge defendant with that offense[.]") (citations omitted).

Considering the "case narrative" in light of all the evidence, Petitioner has failed to demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of felony murder. Therefore, the Court concludes that Petitioner has not made out a credible claim of actual innocence under Schlup, 513 U.S. at 298, 318-21. Absent a credible

claim of actual innocence, there is no need to determine whether equitable tolling for actual innocence is constitutionally required. Doe, 391 F.3d at 161.

**V. Conclusion**

As determined by Judge Skretny in his original order dismissing the petition, and as confirmed by the Second Circuit in its remand order, Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is untimely. Pursuant to the Second Circuit's remand order, the Court has considered Petitioner's claim of actual innocence and finds that he has failed to demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt had the "case narrative" been presented at trial. As Petitioner has failed to set forth a credible claim of actual innocence, there is no need to determine whether equitable tolling of the statute of limitations for actual innocence is constitutionally required. The Court therefore dismisses the petition as untimely.

Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore, 209 F.3d at 111-113. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies

leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

DATED: September 21, 2011
Rochester, New York